IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ISABEL CRISTINA COMPANIONY, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. No. 14-1054-SLR |
| MARK MURPHY, in his individual capacity; MARY COOKE, in her individual capacity; MAUREEN WHELAN, in her individual capacity; MIKE DELOY, in his individual capacity; WENDI CAPLE, in her individual capacity; and JANET DURKEE, in her individual capacity, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Jeffery K. Martin, Esquire of Martin & Associates, P.A., Wilmington, Delaware. Counsel for Plaintiff.

Roopa Sabesan, Esquire and Joseph C. Handlon, Esquire, Deputy Attorneys General, Department of Justice, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: July 1 , 2015
Wilmington, Delaware

![signature](Jan F. Robinson)
ROBINSON, District Judge

I. INTRODUCTION

On August 15, 2014, Isabel Cristina Companiony ("plaintiff") filed an action pursuant to 42 U.S.C. § 1983 against Mark Murphy,[1] Mary L. Cooke,[2] Maureen Whelan,[3] Mike DeLoy,[4] Wendi Caple,[5] and Janet Durkee[6] (collectively, "defendants"), alleging procedural due process violations in relation to the termination of her employment at Baylor Women's Correctional Institution ("BWCI"). (D.I. 1) On September 19, 2014, defendants filed the present motion to dismiss for failure to state a claim. (D.I. 6) The court has jurisdiction pursuant 29 U.S.C. § 1132 and 42 U.S.C. § 1983.

II. BACKGROUND

Plaintiff worked jointly[7] for the DOE and the DOC as a teacher/supervisor at BWCI. (D.I. 1 at ¶¶ 2, 11, 12) On February 28, 2012, plaintiff met with DOC officials regarding

---

[1] At the time relevant to the complaint, Murphy served as Secretary of Education for the Delaware Department of Education ("DOE"). (D.I. 1 at ¶ 3)

[2] At the time relevant to the complaint, Cooke served as the Human Resources Officer for the Office of Human Resources for the DOE. (D.I. 1 at ¶ 4)

[3] At the time relevant to the complaint, Whelan served as Director of Adult and Prison Education for the DOE. (D.I. 1 at ¶ 5)

[4] At the time relevant to the complaint, DeLoy served as Chief of the Bureau of Prisons. (D.I. 1 at ¶ 6)

[5] At the time relevant to the complaint, Caple served as Warden of BWCI for the Delaware Department of Correction ("DOC"). (D.I. 1 at ¶ 7)

[6] At the time relevant to the complaint, Durkee served as the Human Resources and Development Director for the DOC and also served as Acting Commissioner of the DOC in the summer of 2012. (D.I. 1 at ¶ 8)

[7] At the time relevant to the complaint, plaintiff was an employee of the DOE working at BWCI in partnership with the DOC pursuant to the 2000 Memorandum of Understanding and the subsequent 2008 Memorandum of Understanding. (D.I. 1 at ¶ 2)

certain violations that a teacher committed under her supervision. (D.I. 1 at ¶ 19) At the end of this meeting, plaintiff was advised that her security clearance at BWCI was being "temporarily revoked" pending the conclusion of the investigation. *Id.* On March 20, 2012, plaintiff attended a DOC internal affairs meeting where investigators discussed her practices with regard to inmate worker payment and inmate worker vacation. (D.I. 1 at ¶ 20) On May 15, 2012, plaintiff received the DOC internal affairs report ("IA report"), which outlined the investigation. (D.I. 1 at ¶ 25) On May 21, 2012, plaintiff attended the internal affairs meeting with her attorney[8] and denied each of the allegations pending against her. (D.I. 1 at ¶¶ 27, 28) All of the defendants were either present or represented at this meeting. (D.I. 1 at ¶ 27) Following the internal affairs meeting, the decision was made to permanently bar plaintiff from BWCI. (D.I. 1 at ¶ 30)

After plaintiff's barring from BWCI, the parties engaged in discussions regarding the transfer of plaintiff to another correctional institution but only if she were placed on a "performance improvement plan." (D.I. 1 at ¶ 35) Plaintiff objected to being placed on such a plan. *Id.* On July 12, 2012, however, the DOE gave a letter of reprimand and an improvement plan to plaintiff. (D.I. 1 at ¶ 36) Plaintiff filed an appeal on the letter of reprimand and was granted an appeal date. (D.I. 1 at ¶¶ 36, 37) Prior to the letter of reprimand appeal date, on August 17, 2012, plaintiff received a "notice of intent to terminate employment letter." (D.I. 1 at ¶ 41) The letter explained that there was "just cause" for plaintiff's termination in the form of the DOC's decision to bar plaintiff from working at any DOC facility. *Id.* The letter also identified the date of plaintiff's "pre-

---

[8] Plaintiff's counsel was permitted to attend but not permitted to participate in the meeting. (D.I. 1 at ¶ 28)

2

termination hearing" as August 27, 2012. *Id.*

On August 24, 2012, plaintiff attended the letter of reprimand meeting and presented evidence on her behalf. (D.I. 1 at ¶ 43) On August 27, 2012, plaintiff and her counsel attended the "pre-termination hearing" where she once again presented evidence on her behalf. (D.I. 1 at ¶¶ 41, 44) On September 4, 2012, plaintiff received a letter upholding the letter of reprimand against her and a termination of employment letter. (D.I. 1 at ¶ 45) The termination of employment letter stated that her permanent barring from any DOC facility effectively made it impossible for her to fulfill her responsibilities as a teacher/supervisor. *Id.* The letter also outlined the process for a post-termination hearing pursuant to 14 Del. C. § 121(a)(5). *Id.* Plaintiff requested and attended, with her counsel, a post-termination hearing on October 2, 2012, but withdrew her request for a further hearing "because DOC was not made a party to the hearing process." (D.I. 1 at ¶ 49)

### III. STANDARD[9]

---

[9] Plaintiff argues that the motion to dismiss at bar should be treated as a motion for summary judgment because defendants have "misstat[ed], twist[ed], embellish[ed,] and/or chang[ed] the facts as presented in [p]laintiff's complaint." (D.I. 11 at 10)

> As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a "document integral to or explicitly relied upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment."
> The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated "[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint."

*In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations omitted)(emphasis omitted).

Issues with nomenclature do not raise "lack of notice" concerns. Although defendants do supply an exhibit (D.I. 7) with their motion to dismiss, plaintiff takes no issue with the information contained in this exhibit, such as the IA report, and "relied upon

3

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a two-part analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. *Fowler*, 578 F.3d. at 210-11. Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

---

[it] in framing the complaint." *Id.*; (*see* D.I. 1 at ¶ 25) The motion at bar remains a motion to dismiss.

The court's determination is not whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## IV. DISCUSSION

### A. Procedural Due Process

Plaintiff's § 1983 claims against defendants appear to be substantively grounded in the Fourteenth Amendment. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### 1. Failure to utilize state remedies

The Third Circuit has explained that,

> [i]n order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her,

5

> unless those processes are unavailable or patently inadequate. A state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them.

*Alvin v. Suzuki*, 227 F.3d 107, 116 (3d. Cir. 2000) (citations omitted). The failure to pursue state remedies, however, is excused in instances where there is evidence that the procedures are a sham or when access to procedure is absolutely blocked. *Id.* at 118 (citations omitted).

Section 121(a)(5) of Title 14 of the Delaware Code provides an appeal process in which plaintiff could request a formal hearing before a neutral officer, the Director of the Office of Management and Budget, and have her attorney present. 14 Del. C. § 121(a)(5). Plaintiff concedes that she chose not to utilize the post-termination proceeding provided under § 121(a)(5), because her request to have DOC participate in the hearing was rejected. (D.I. 1 at ¶ 49) This rejection, in and of itself, is not enough to suggest that the post-termination process was inadequate or a procedural "sham." *See McKeesport Hosp. v. Accreditation Council,* 24 F.3d 519, 533 (3d Cir. 1994) ("The Constitution requires a proceeding appropriate under the circumstances; it does not require confrontation and cross-examination in every proceeding."). Having failed to avail herself of the hearing process pursuant to § 121(a)(5), plaintiff has not demonstrated a violation of due process with regard to post-termination.

### 2. Sufficiency of due process

A plaintiff asserting a procedural due process claim under 42 U.S.C. § 1983 must "allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455

6

F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin*, 227 F.3d at 116).

### a. Protected property interest

To have a protectable property interest in a job, a person must have a "legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Legitimate claims of entitlement to "property" are not created by the Constitution; rather, they are created by state laws that "secure certain benefits and that support claims of entitlement to those benefits." *Id.* "In the governmental context, while at-will employment is not generally considered a property interest, employment contracts that contain a 'just cause' provision create a property interest in continued employment." *Wilson v. MVM, Inc.*, 475 F.3d 166, 177 (3d Cir. 2007) (citations omitted). "This Court has consistently held that public employees have a property interest if the employer has set out guidelines as to grounds for discharge." *Dixon v. Mayor & Council of City of Wilmington*, 514 F. Supp. 250, 253 (D. Del. 1981) (citations omitted); *see also Caruso v. Superior Court of Delaware*, Civ. No. 12-277-GMS, 2013 WL 1558023, at *7 (D. Del. Apr. 12, 2013), report and recommendation adopted, Civ. No. 12-277-GMS, 2013 WL 3177751 (D. Del. June 19, 2013).

Plaintiff alleges that she has a protected property interest in her continued employment at BWCI because her employment was subject to the termination provisions contained in her 2006 employment contract. (D.I. 11 at 15-16) Defendants contend that even if plaintiff's allegation is true, she nonetheless lacks a property interest in a DOC security clearance or a job that requires a DOC security clearance. (D.I. 12 at 6) The court will assume for purposes of this motion that plaintiff had a property interest in her job.

In *Department of Navy v. Egan*, 484 U.S. 518 (1988), the Supreme Court stated that "it should be obvious that no one has a 'right' to a security clearance." *Id.* at 528. "[E]very court of appeals [that] has addressed the issue has ruled that a person has no constitutionally protected liberty or property interest in a security clearance or a job requiring a security clearance." *Stehney v. Perry*, 101 F.3d 925, 936 (3d Cir. 1996) (citations omitted). The court recognizes that the cited cases involve federal security clearances; however, like those clearances, the grant of a DOC security clearance in the case at bar requires a discretionary act on the part of the granting official or department. Plaintiff has not demonstrated a protected property interest in her position at BWCI because it is contingent upon a DOC security clearance. Without such a protected property interest, plaintiff has no claim for a violation of due process. Moreover, as described below, the procedures used to revoke plaintiff's security clearance were sufficient to provide due process.

### b. Pre-termination due process

Generally, a pre-termination hearing "need not be elaborate." *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985). "Where adequate post-termination procedures are available, an employee is entitled only to 'notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.'" *Schmidt v. Creedon*, 639 F.3d 587, 596 (3d Cir. 2011) (citing *Loudermill*, 470 U.S. at 545). The pre-termination hearing "need not definitively resolve the propriety" of the termination. *Loudermill*, 470 U.S. at 545. "It should be an initial check against mistaken decisions — essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the

proposed action." *Id.* at 545-46.

As the facts demonstrate, plaintiff participated in several meetings and hearings[10] both before the revocation of her security clearance and prior to her termination. First, prior to her permanent barring from BWCI, on May 21, 2012, plaintiff attended an internal affairs meeting with her attorney and denied each of the allegations pending against her in the IA report. (D.I. 1 at ¶¶ 27, 28) All of the defendants were either present or represented at the meeting and plaintiff was able to present a 26-page document to support her claims. *Id.* Next, on August 24, 2012, plaintiff attended a meeting concerning the letter of reprimand she received as a result of the allegations pending against her. (D.I. 1 at ¶ 43) At this meeting, she was able to present a 17-page document. *Id.* Lastly, on August 27, 2012, plaintiff attended a pre-termination meeting with her counsel and was able to present a 19-page document in response to her pending termination. (D.I. 1 at ¶ 44)

In totality, the pre-termination procedures pass muster under *Loudermill*, providing plaintiff notice, an explanation from her employer, and an opportunity to present her story. As a facially adequate post-termination proceeding under § 121(a)(5) was available, plaintiff was afforded the required pre-termination due process.[11]

### B. Adherence to DOC and DOE Policies

---

[10] Plaintiff disputes defendants' use of "hearings." (D.I. 11 at 2) Plaintiff's complaint switches between the terms "hearing" and "meeting" when discussing the August 27, 2012 appeal. (See D.I. 1 at ¶ 41 (characterizing the appeal as a "hearing;" D.I. 1 at ¶ 44 (characterizing the appeal as a "meeting")) The key question is the adequacy of the proceedings, not the nomenclature.

[11] Plaintiff cites at length to *Caruso* to establish her property right but fails to explain why the procedures in her case were inadequate pre-termination. *Caruso* is not analogous to the facts at bar in that it dealt with a coerced resignation that entailed no form of pre-termination or post-termination due process. *Caruso*, 2013 WL 1558023 at *2.

"To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005). "[Section] 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). Federal and state regulations such as DOC and DOE policies do not give rise to a liberty interest. *See Rambert v. Beard*, Civ. No. 09-0634, 2012 WL 760619, at *13 (M.D. Pa. Mar. 7, 2012) (compiling cases and holding that "[f]ederal and state regulations in and of themselves do not create a liberty interest" in the disputed DOC procedure at issue).[12]

In the case at bar, the DOC and DOE policies and procedures are neither provisions in the Constitution, nor federal law. They are state policies and procedures of the Delaware DOC and DOE respectively. Defendants' alleged failure to follow the prescribed disciplinary process provided for under DOE and DOC policies and procedures is not itself a violation subject to § 1983.

## V. CONCLUSION

For the aforementioned reasons, defendants' motion to dismiss (D.I. 6) is granted. An appropriate order shall issue.

---

[12] The court finds no need to address the issue of qualified immunity inasmuch as defendants did not violate plaintiff's constitutional rights.